JONATHAN D. HART #16469
HART & HART, P.C.
631 N. 300 W.
Salt Lake City, UT   84103
Telephone: (801) 534-1100
jonny@hartandhartlaw.com
*Attorney for Plaintiff*

---

**IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| GAYLENE DAVIS, individually, on behalf of the heirs and as Personal Representative of the Estate of JASON TODD MACE, <br><br> Plaintiff, <br><br> vs. <br><br> PROVO CITY; MEDINA DORE; JASON MAHONEY; ZACHARY MIGUEL; CARTER GROW; CHET WHATCOTT; R. DALE CHRISTENSEN, M.D.; INTERMOUNTAIN HEALTH CARE, INC., dba UTAH VALLEY HOSPITAL; and DOES 1-10. <br><br> Defendants. | **COMPLAINT** <br><br> **(JURY DEMANDED)** <br><br> Case No. <br><br> Judge: |

COMES NOW Plaintiff Gaylene Davis, for the Estate of Jason Todd Mace and on behalf of the heirs of Jason Todd Mace, by and through undersigned counsel, and hereby complains and alleges against Defendants as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's

–1–

cause of action arising under the Constitution of the Unites States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction of Plaintiff's causes of action arising under the Utah state law pursuant to 28 U.S.C. § 1367.

2. Venue lies in the United States District Court for the District of Utah because the events and omissions giving rise to Plaintiff's claims occurred in Utah County, Utah. 28 U.S.C. § 1391(b)(2).

3. Defendants are subject to personal jurisdiction within this district.

4. Plaintiff has completed the notice-of-claim and undertaking requirements of the Utah Governmental Immunity Act, Utah Code Ann. § 63G-7-101 *et seq.*

5. Plaintiff has completed the pre-litigation requirements of the Utah Health Care Malpractice Act, Utah Code Ann. § 78B-3-401 *et seq.*

## PARTIES

6. Prior to his death, Jason Todd Mace (hereinafter, "Decedent"), was and at all times pertinent had been a citizen of the United States and a resident of the State of Utah.

7. Plaintiff Gaylene Davis, the mother of Decedent, has been duly appointed personal representative of the Estate of Jason Todd Mace by the Fourth Judicial District Court in and for Utah County, State of Utah, case number 213400591.

8. Plaintiff brings this action on behalf of the heirs of Jason Todd Mace and on behalf of the Estate of Jason Todd Mace.

9. Defendant Provo City (hereinafter, "Provo"), is a political subdivision of the State of Utah. As part of its corporate powers, and at all times relevant, Provo maintained and

controlled Provo City Police Department. Provo is a 'person' subject to 42 U.S.C. § 1983 liability.

10. Defendant Medina Dore (hereinafter, "Dore"), believed to be a resident of Utah County, Utah, was employed as a Police Officer by Provo. Defendant Dore is a person subject to 42 U.S.C. § 1983 liability.

11. Defendant Jason Mahoney (hereinafter, "Mahoney"), believed to be a resident of Utah County, Utah, was employed as a Police Officer by Provo. Defendant Mahoney is a person subject to 42 U.S.C. § 1983 liability.

12. Defendant Zachary Miguel (hereinafter, "Miguel"), believed to be a resident of Utah County, Utah, was employed as a Police Officer by Provo. Defendant Miguel is a person subject to 42 U.S.C. § 1983 liability.

13. Defendant Carter Grow (hereinafter, "Grow"), believed to be a resident of Utah County, Utah, was employed as a Police Officer, in a supervisory role, by Provo. Defendant Grow is a person subject to 42 U.S.C. § 1983 liability.

14. Defendant Chet Whatcott (hereinafter, "Whatcott"), believed to be a resident of Utah County, Utah, was employed as a Police Officer, in a supervisory role, by Provo. Defendant Whatcott is a person subject to 42 U.S.C. § 1983 liability.

15. Defendant R. Dale Christensen, M.D., (hereinafter, "Dr. Christensen"), an emergency physician licensed to practice medicine in Utah, and upon information and belief is a resident of Utah County, Utah.

16. Defendant Intermountain Health Care, Inc., DBA Utah Valley Hospital, (hereinafter, "UVH"), is a Utah corporation.

17. Does 1-10 are presently unidentified individuals and/or entities, upon information and belief thought to be residents of the State of Utah, that through their acts or omissions were reckless and/or negligent in causing or contributing to the incident described hereafter. Plaintiff reserves the right to name these individuals or entities as Defendants in this action when their identities are discovered.

## GENERAL ALLEGATIONS

18. On September 28, 2020, at about 1:00 a.m., Officers Mahoney, Miguel, Dore, Whatcott, and Grow (collectively, the "Officers") responded to a dispatch call at Decedent's home.

19. Officer Whatcott and Grow were supervising officers with Provo City Police.

20. While at Decedent's home, Plaintiff informed the Officers that Decedent had intentionally consumed a dangerous amount of prescription pills, and Plaintiff provided specific information about which prescription pills had been consumed.

21. Decedent was then placed in custody at about 1:10 a.m. for his alleged involvement in a domestic physical altercation with his brother.

22. The Officers denied a request by the Provo City Fire Department, who was on the scene at Decedent's home, for medical assistance of Decedent.

23. After being placed in an officer's vehicle, Officer Mahoney noticed that Decedent vomited, and Officer Mahoney then informed other officers.

24. Decedent arrived at UVH at around 1:25 a.m. for a medical clearance to go to jail.

25. UVH staff were informed by City officers that Decedent had minor injuries on his hand and foot.

26. No Provo officer informed medical staff at UVH that Decedent had consumed a dangerous amount of prescription medication.

27. Officers Grow and Whatcott did not ensure that their subordinates inform medical staff at UVH of Decedent's pill consumption.

28. Officers Dore, Mahoney, and Miguel were present at UVH during Decedent's medical clearance.

29. Decedent exhibited many signs of drug impairment while at UVH. Specifically, Decedent was extremely agitated, irrational, and belligerent. He also had vomited, had slurred speech, was extremely drowsy, and was mobilized only by wheelchair.

30. Decedent had a well-documented history of substance abuse, mental health, and suicide attempts at UVH; including less than three months prior, treatment at UVH for an intentional overdose.

31. UVH nurses noted that Decedent was drunk and vomiting, and also that his appearance showed evidence of chemical influence.

32. Dr. Christensen medically cleared Decedent for jail without any treatment for Decedent's drug impairments.

33. On the form clearing Decedent for Jail, Dr. Christensen answered "No" on the question, "[i]s the patient exhibiting any signs of drug/alcohol impairment?"

34. Dr. Christensen then wrote "N/A" on the follow-up portion requesting, "[i]f yes, lab results."

35. Decedent was wheelchaired out of UVH at around 2:10 a.m. and transported to Utah County Jail (hereinafter, the "Jail") by Officer Mahoney.

36. Decedent vomited again while being transported to the Jail, and Officer Mahoney informed Officer Dore of that upon arriving at the Jail.

37. Once at the Jail, the Jail's nurse was concerned about Decedents impairment and required that Officer Mahoney perform a breathalyzer test before the Jail would consider admitting Decedent. The test revealed a .06 blood alcohol level.

38. Decedent began to have seizures while at the Jail's sallyport.

39. Jail medical staff assisted Decedent and an ambulance was called to transport Decedent to a hospital.

40. While waiting for the ambulance and while Decedent was repeatedly having seizures and struggling for oxygen, the Jail nurse asked Officers Dore and Mahoney if Decedent's family said anything about him doing drugs. Both officers denied being told about Decedent taking drugs.

41. An ambulance transported Decedent back to UVH, where he arrived in cardiac arrest.

42. At 3:53 a.m. Decedent was pronounced dead.

43. The cause of Decedent's death was drug intoxication. The drugs causing Decedent's death were the same as described by Plaintiff to the Officers.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 (Failure to Provide Proper Medical Care) Against Provo Employees

44. Plaintiff adopts and re-alleges all preceding allegations.

45. Under federal law, made applicable to state and local governments and to those officers and officials acting under color of law and authority, Decedent had the Constitutional right to be free from cruel and unusual punishment.

–6–

46. Decedent's right to be free from cruel and unusual punishment is a fundamental right protected by the Eight and Fourteenth Amendments to the United States Constitution, as well as by Section 1983 of the Civil Rights Act, Title 42 of the United States Code.

47. Decedent's right to be free from cruel and unusual punishment was violated by Provo Employees.

48. During the material events in this case, Decedent was under the dominion, custody, and control of Provo Employees who, acting under color of law, were deliberately indifferent to Decedents serious medical needs.

49. Provo Employees exhibited deliberate indifference to Decedent's serious medical needs by willfully ignoring Plaintiff's dire warning that Decedent had intentionally ingested a dangerous amount of prescription medication.

50. Provo Employees also exhibited deliberate indifference to Decedent's serious medical needs by willfully denying requests from the Provo City Fire Department medical staff for medical assistance to Decedent after being informed that Decedent had ingested a dangerous amount of prescription medication.

51. Provo Employees also exhibited deliberate indifference to Decedent's serious medical needs by willfully withholding information about Decedent's drug overdose to medical staff at UVH.

52. Provo Employees also exhibited deliberate indifference to Decedent's serious medical needs by removing Decedent from UVH knowing that Decedent had not received any treatment for his drug overdose while there.

53. Provo Employees also exhibited deliberate indifference to Decedent's serious medical needs by willfully withholding information about Decedent's drug overdose to medical staff at the Jail, even while Decedent was seizing on the ground struggling for breath.

54. Provo Employees also exhibited deliberate indifference to Decedent's serious medical needs by willfully ignoring the obvious signs that Decedent was severely and dangerously impaired by drugs and/or alcohol.

55. Provo Employees also exhibited deliberate indifference to Decedent's serious medical needs by willfully ignoring the severe and obvious deterioration of Decedent's health while in their custody.

56. Provo Employees violated Decedent's constitutional rights by willful misconduct.

57. Provo Employees knew or should have known that Decedent had ingested a dangerous amount of prescription pills and that he needed to receive medical treatment for that condition, but not one of the Provo Employees took any affirmative steps to ensure medical treatment for his serious medical condition.

58. Provo Employees knew of the excessive risk Decedent's serious medical condition posed to his health and safety, yet they disregarded this risk.

59. At all times material herein, Decedent was suffering from suicidal ideation and drug impairments, and he was incapable of medically managing his condition.

60. At all times material herein, Decedent was dependent upon Provo Employees to manage his condition.

61. As gatekeepers of vital medical information, Provo Employees took upon themselves the responsibility to make life or death decisions for Decedent by willfully withholding information about Decedent's medical condition to medical staff.

62. The conduct of Provo Employees as alleged herein deprived Decedent of his Constitutional civil rights.

63. As a result of being deprived of his Constitutional civil rights, Decedent was made to suffer cruel and unusual punishment at the hand of Provo Employees.

64. As a direct and proximate result of Provo Employees' deliberate indifference, Decedent died while in their custody.

65. As a direct and proximate result of Provo Employees' deliberate indifference, Decedent was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been treated and stabilized. Accordingly, Plaintiff seeks compensation in an amount to be determined at trial for the pain and suffering Decedent endured prior to his death.

66. As a direct and proximate result of Provo Employees' deliberate indifference, Decedent's estate incurred special damages (economic damages) in the amount of $13,622.55 for funeral and medical costs.

67. As a direct and proximate result of Provo Employees' deliberate indifference, Decedent's estate incurred special damages (economic damages) for Decedent's loss of future earnings in an amount to be determined at trial.

–9–

68. Further, due to the willful, malicious, and/or callous nature of Provo Employees' conduct, manifesting a knowing and reckless disregard for Decedent's rights, Plaintiff seeks punitive damages against Provo Employees.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 (Failure to Supervise) Against Provo Supervising Employees, Officers Whatcott and Grow

69. Plaintiff adopts and re-alleges all preceding allegations.

70. During the material events in this case, Officer Whatcott and Officer Grow were supervising officers. Officer Whatcott was a Lieutenant and Officer Grow was a Sergeant with the Provo City Police Department. Officer Grow was designated the shift supervisor during the material events in this case.

71. Officers Whatcott and Grow were in charge of the other officers, including Officers Dore, Mahoney, and Miguel, during the material events in this case.

72. Officers Whatcott and Grow were personally involved in the material events in this case.

73. Specifically, Officers Whatcott and Grow were physically at Decedent's home during his arrest and had actively gathered information about Decedent from Decedent's family, including information about what specific medications Decedent had ingested.

74. Officers Whatcott and Grow exhibited deliberate indifference to Decedent's serious medical needs by willfully withholding important information they had personally gathered, including information about what medications Decedent had ingested, from subordinate officers responsible for communicating with medical staff regarding Decedent.

–10–

75. Officers Whatcott and Grow also exhibited deliberate indifference to Decedent's serious medical needs by willfully failing to control and/or direct their subordinates in obtaining medical care for Decedent's drug overdose.

76. Officers Whatcott and Grow violated Decedent's constitutional rights by willful misconduct.

77. Officers Whatcott and Grow knew, or should have known, that their actions and/or inactions created a situation with a substantial risk of constitutional harm to Decedent.

78. As a result of the conduct of Officers Whatcott and Grow, Decedent did not receive treatment for his serious medical needs and was made to suffer cruel and unusual punishment at the hand of Provo Employees.

79. As a direct and proximate result of Officers Whatcott and Grow's deliberate indifference, Decedent died while in custody.

80. As a direct and proximate result of Officers Whatcott and Grow's deliberate indifference, Decedent was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been treated and stabilized. Accordingly, Plaintiff seeks compensation in an amount to be determined at trial for the pain and suffering Decedent endured prior to his death.

81. As a direct and proximate result of Officers Whatcott and Grow's deliberate indifference, Decedent's estate incurred special damages (economic damages) in the amount of $13,622.55 for funeral and medical costs.

82. As a direct and proximate result of Officers Whatcott and Grow's deliberate indifference, Decedent's estate incurred special damages (economic damages) for Decedent's loss of future earnings in an amount to be determined at trial.

83. Further, due to the willful, malicious, and/or callous nature of Provo Employees' conduct, manifesting a knowing and reckless disregard for Decedent's rights, Plaintiff seeks punitive damages against Provo Employees.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 (Municipal Liability) Against Provo

84. Plaintiff adopts and re-alleges all preceding allegations.

85. Policy-making officials of Provo were deliberately indifferent of the need to properly train and supervise employees at Provo City Police Department on how to respond to individuals requiring medical care for serious medical needs, including drug overdoses.

86. Provo had actual and constructive notice that its failure to properly train and supervise was substantially certain to result in a constitutional violation of a detainee's right to medical care.

87. Provo consciously and deliberately chose to disregard this risk of harm.

88. Prior incident(s) involving Provo City Police officers constituted a pattern of tortious conduct.

89. A violation of a detainee's right to medical care was a highly predictable or plainly obvious consequence of Provo's failure to train and supervise its police officers on responding to individuals suspected of a drug overdose.

90. This failure to train and supervise was a deliberate and conscious choice by Provo.

91. This claim is supported by the fact that Provo City Police have had a previous incident, or incidents, where officers were told that an individual was suspected of a drug overdose and later died due to the failure of Provo Employees to ensure medical treatment.

92. Provo knew, or should have known, that their actions and/or inactions created a situation with a substantial risk of constitutional harm to arrestees.

93. As a result of the conduct of Provo, Decedent did not receive treatment for his serious medical needs and was made to suffer cruel and unusual punishment at the hand of Provo Employees.

94. As a direct and proximate result, Decedent died while in custody of Provo Employees.

95. As a direct and proximate result, Decedent was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been treated and stabilized. Accordingly, Plaintiff seeks compensation in an amount to be determined at trial for the pain and suffering Decedent endured prior to his death.

96. As a direct and proximate result, Decedent's estate incurred special damages (economic damages) in the amount of $13,622.55 for funeral and medical costs.

97. As a direct and proximate result, Decedent's estate incurred special damages (economic damages) for Decedent's loss of future earnings in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Deprivation of Rights under Article I, Section 9 of the Utah Constitution, Unnecessary Rigor in Confinement Against Provo and its Employees

98. Plaintiff adopts and re-alleges all preceding allegations.

–13–

99.  Under Article I, Section 9 of the Utah Constitution, Decedent had a right to be free from being subjected to or treated with unnecessary rigor while under arrest.

100.  Decedent's right to be free from unnecessary rigor while under arrest was violated by Provo Employees.

101.  During the material events in this case, Decedent was under arrest by Provo Employees.

102.  Provo Employees unreasonably subjected Decedent to harsh, strict, and/or severe treatment by unnecessarily exposing Decedent to an increased risk of serious harm.

103.  Decedent was unnecessarily exposed to an increased risk of serious harm when Provo Employees refused requests from the Provo City Fire Department medical staff shortly after the arrest for medical assistance to Decedent after being informed that Decedent had ingested a dangerous amount of prescription medication.

104.  Decedent was also unnecessarily exposed to an increased risk of serious harm when Provo Employees withheld vital information about Decedent's serious medical condition from medical staff at UVH.

105.  Decedent was also unnecessarily exposed to an increased risk of serious harm when Provo Employees removed Decedent from UVH knowing that Decedent had not received any treatment for his drug overdose while there.

106.  Decedent was also unnecessarily exposed to an increased risk of serious harm when Provo Employees withheld vital information about Decedent's serious medical condition from medical staff at the Jail.

–14–

107. Decedent was also unnecessarily exposed to an increased risk of serious harm when Provo Employees willfully ignored the obvious signs that Decedent was severely and dangerously impaired by drugs and/or alcohol.

108. Decedent was also unnecessarily exposed to an increased risk of serious harm when Provo Employees willfully ignored the severe and obvious deterioration of Decedent's health while in their custody.

109. Provo Employees were explicitly notified that Decedent ingested a dangerous amount of prescription medication.

110. Provo Employees were also on notice of Decedent's serious medical condition due to the signs of drug impairment that he exhibited while under arrest, i.e., vomiting, nausea, profuse sweating, irrational, emotional, speech slurring, and extreme drowsiness.

111. Provo Employees knew, or should have known, that a person experiencing a drug overdose has a serious medical condition that is time-sensitive, and that delaying treatment would likely increase the severity of injury and suffering to that person.

112. Provo Employees did not inform any medical staff about Decedent ingesting a dangerous amount of prescription medication or about the impairment signs that Decedent exhibited while he was under arrest.

113. Provo Employees flagrantly failed to ensure medical treatment for Decedent's known serious medical condition while he was under arrest.

114. Specifically, failing to ensure treatment for an arrestee known to be experiencing a drug overdose presents an obvious and known serious risk of harm to the arrestee.

115. There is no reasonable justification for Provo Employees' failure to ensure medical treatment for Decedent's known serious medical condition.

116. Provo failed to provide adequate policies, procedures, protocols, and training to their employees or contractors to reasonably provide for the safety and health of arrestees, including Decedent, who require medical treatment for known serious medical conditions.

117. Provo's failure to provide adequate policies, procedures, protocols, and training evince a deliberate indifference to the Constitutional rights of its arrestees. And, that such a failure is likely to cause serious injury or death to those under arrest by Provo Employees.

118. Provo's and its employees' failure to ensure medical care for Decedent's serious medical condition, which was known by Provo Employees, subjected Decedent to unnecessary rigor in violation of Utah's Constitution.

119. As a direct and proximate result of Provo Employees' failure, Decedent died while in their custody.

120. As a direct and proximate result of Provo Employees' failure, Decedent was caused to endure prolonged pain and suffering leading up to the time of his death, even though his condition could have been treated and stabilized. Accordingly, Plaintiff seeks compensation in an amount to be determined at trial for the pain and suffering Decedent endured prior to his death.

121. As a direct and proximate result of Provo Employees' failure, Decedent's estate incurred special damages (economic damages) in the amount of $13,622.55 for funeral and medical costs.

122. As a direct and proximate result of Provo Employees' failure, Decedent's estate incurred special damages (economic damages) for Decedent's loss of future earnings in an amount to be determined at trial.

123. Further, due to the willful, malicious, and/or callous nature of Provo Employees' conduct, manifesting a knowing and reckless disregard for Decedent's rights, Plaintiff seeks punitive damages against Provo Employees.

## FIFTH CAUSE OF ACTION
### Negligence Against Dr. Christensen

124. Plaintiff adopts and re-alleges all preceding allegations.

125. A provider-patient relationship existed between Dr. Christensen and Decedent.

126. Dr. Christensen undertook and did render health care to Decedent.

127. Dr. Christensen owed a duty of care to Decedent consistent with the duty of care owed by similar healthcare providers.

128. Dr. Christensen breached the applicable standard of care that resulted in harm to Decedent.

129. Specifically, considering Decedent's documented history of substance abuse, mental health, and suicide attempts, as well as Decedent's signs of drug/alcohol impairment during the material events in this case, and nursing staff opinions that Decedent was

drunk or under chemical influence, Dr. Christensen failed to properly diagnose and treat Decedent for drug/alcohol intoxication.

130. Dr. Christensen's failure to properly diagnose and treat Decedent for drug/alcohol intoxication caused Decedent to be sent to jail without medical treatment and to endure prolonged pain and suffering leading to his death.

131. As a direct and proximate result of Dr. Christensen's failures, Plaintiff seeks compensation in an amount to be determined at trial for pain and suffering Decedent endured prior to his death.

132. As a direct and proximate result of Dr. Christensen's failures, Decedent's estate incurred special damages (economic damages) in the amount of $13,622.55 for funeral and medical costs.

133. As a direct and proximate result of Dr. Christensen's failures, Decedent's estate incurred special damages (economic damages) for Decedent's loss of future earnings in an amount to be determined at trial

## SIXTH CAUSE OF ACTION
### Negligence Against UVH Nursing Staff

134. Plaintiff adopts and re-alleges all preceding allegations.

135. A provider-patient relationship existed between UVH nursing staff and Decedent.

136. UVH nursing staff undertook and did render health care to Decedent.

137. UVH nursing staff owed Decedent a duty of care consistent with the duty of care owed by similar healthcare providers.

138. UVH nursing staff breached the applicable standard of care that resulted in harm to Decedent.

139. Specifically, considering Decedent's signs of drug/alcohol impairment while being treated by UVH nursing staff, UVH nursing staff failed to report Decedent's impairment signs and/or failed to report changes in Decedent's status to Dr. Christensen.

140. UVH nursing staff's failure to report Decedent's impairment signs and/or failure to report changes in Decedent's status to Dr. Christensen caused Decedent to be sent to jail without medical treatment and caused Decedent to endure prolonged pain and suffering leading to his death.

141. As a direct and proximate result of UVH nursing staff's failures, Plaintiff seeks compensation in an amount to be determined at trial for pain and suffering Decedent endured prior to his death.

142. As a direct and proximate result of UVH nursing staff's failures, Decedent's estate incurred special damages (economic damages) in the amount of $13,622.55 for funeral and medical costs.

143. As a direct and proximate result of UVH nursing staff's failures, Decedent's estate incurred special damages (economic damages) for Decedent's loss of future earnings in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Vicarious Liability/Respondeat Superior Against UVH

144. Plaintiff adopts and re-alleges all preceding allegations.

145.  The negligent acts of the employees and agents of UVH (including Dr. Christensen, UVH nursing staff, and others) caused Decedent's death.

146.  These acts were the kind of act that Dr. Christensen, UVH nursing staff, and other staff typically perform as employees and agents of UVH.

147.  These acts occurred within the ordinary hours and spatial boundaries of their employment and agency.

148.  These acts were motivated, at least in part, by the purpose of serving the interests of UVH.

149.  UVH is liable under the doctrine of respondeat superior for the damage caused by these negligent acts.

**EIGHTH CAUSE OF ACTION**
**Wrongful Death (Utah Code Ann. § 78B-3-106) Against All Defendants**

150.  Plaintiff adopts and re-alleges all preceding allegations.

151.  As complained of herein, Decedent's death was caused by the wrongful acts or negligence of Defendants.

152.  Provo Employee Defendants acted or failed to act through willful misconduct.

153.  Plaintiff, as Personal Representative of the Estate of Jason Todd Mace, maintains an action of wrongful death against Defendants for the benefit of the heirs of Jason Todd Mace (the "Heirs").

154.  As a direct and proximate result of Defendant's wrongful acts or negligence, the Heirs have suffered, in an amount to be determined at trial, a loss of affection, counsel, and

advice; a loss of the Decedent's care and solicitude for their welfare; a loss of comfort and pleasure; and a loss of financial support.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as proven at trial, including but not limited to:

a. For all damages that Plaintiff, on behalf of the heirs and as Personal Representative of the Estate of Jason Todd Mace, is entitled to and that are reasonable in the circumstances.

b. Economic damages in the amount of $13,622.55 for funeral expenses and other medical costs;

c. Economic damages for loss of income in such amounts as will be proven at trial;

d. For non-economic damages specifically for the pain and suffering that Decedent experienced from the time of Defendants' wrongdoing to the time of his death.

e. For non-economic damages for the Heirs in such amounts as will be proven at trial;

f. For reasonable attorneys' fees and experts' fees pursuant to 42 U.S.C. § 1988;

g. For pre- and post- judgment interest;

h. For punitive damages because Defendants' actions were the result of a reckless and callous nature, a willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of others; and

i. Such other and further relief as the court deems appropriate.

//

DATED this 26th day of September, 2022.

        HART & HART

         */s/    Jonathan D. Hart*
        JONATHAN D. HART
        Attorney for Petitioner