WILLIAM S. HELFAND, #16686
PATRICK R. CHAREST, #17184
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6550 South Millrock Drive, Suite 200
Salt Lake City, Utah 84121
Telephone: 801.562.5555
Facsimile: 801.562.5510
Bill.Helfand@lewisbrisbois.com
Patrick.Charest@lewisbrisbois.com
*Attorneys for Provo City, Medina Dore, Jason Mahoney, Zachary Miguel, Carter Grow, and Chet Whatcott*

---

## IN UNITED STATES DISTRICT COURT

## STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GAYLENE DAVIS, individually, on behalf of the heirs and as Personal Representative of the Estate of JASON TODD MACE, <br><br> Plaintiff, <br><br><br> PROVO CITY; MEDINA DORE, JASON MAHONEY, ZACHARY MIGUEL; CARTER GROW; CHET WHATCOTT; R. DALE CHRISTENSEN, M.D.; INTERMOUNTAIN HEALTH CARE, INC., dba Utah Valley Hospital; and DOES 1-10. <br><br> Defendants. | **DEFENDANTS PROVO CITY; MEDINA DORE; JASON MAHONEY; ZACHARY MIGUEL; CARTER GROW; AND CHET WHATCOTT'S MOTION TO DISMISS** <br><br> **Case No. 2:22-CV-00629-DBB-DAO** <br><br> **Judge David Barlow** <br><br> **Magistrate Judge Daphne Oberg** |

## **MOTION**

Defendants Provo City, Medina Dore, Jason Mahoney, Zachary Miguel, Carter Grow, and

Chet Whatcott ("City Defendants") move to dismiss Plaintiff's complaint under Fed. R. Civ. P.

12(b)(6), for failure to state a claim upon which relief may be granted.

91113457.2

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED.................................................................................................................2

RELEVANT FACTS ..................................................................................................................2

MEMORANDUM OF LAW .......................................................................................................4

ARGUMENT AND AUTHORITIES..........................................................................................6

      A.     Plaintiff's Own Allegations Show Mace Was Provided Medical Care ...................6

      B.     Plaintiff Fails to State a Plausible Claim Against the City ......................................9

            1.     The City Cannot Be Liable Unless an Officer Violated the
                    Constitution....................................................................................................9

                    i       Plaintiff Fails to Allege Facts Showing Any
                            Unconstitutional City Policy.............................................................10

                    ii     Plaintiff also fails to allege facts to establish a direct causal
                            link between the policy or custom and the constitutional
                            injury. ...............................................................................................14

                    iii    Plaintiff also fails to allege facts to demonstrate the City
                            established a policy with deliberate indifference to an
                            almost inevitable constitutional injury...........................................15

      C.     Plaintiff Fails To State a Claim of Supervisory Liability ......................................16

      D.     Qualified Immunity Bars Plaintiff's Claims Against All Individual
             Defendants ..............................................................................................................18

      E.     Plaintiff Lacks Standing to Sue for Unnecessary Rigor In Confinement ..............21

CONCLUSION.........................................................................................................................22

i

91113457.2

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Albright v. Rodriguez,*
51 F.3d 1531 (10th Cir. 1995) ...............................................................................19

*Aldaba v. Pickens,*
844 F.3d 870 (10th Cir. 2016) ...............................................................................20

*Archuleta v. Wagner,*
523 F.3d 1278 (10th Cir. 2008) .............................................................................19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................5, 20

*Bd. of the Cty. Comm'rs v. Brown,*
520 U.S. 397 (1997).........................................................................................15, 16

*Beedle v. Wilson,*
422 F.3d 1059 (10th Cir. 2005) .............................................................................14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................5

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007)....................................................................................4, 5, 15

*Benavides v. Cty. of Wilson,*
955 F.2d 968 (5th Cir. 1992) .................................................................................12

*Bick v. Utah State Univ.,*
No., 2021 U.S. Dist. LEXIS 110003 (D. Utah June 10, 2021)................................6

*Callahan v. Poppell,*
471 F.3d 1155 (10th Cir. 2006) ...............................................................................7

*Carpenter v. City of Bean Station,*
2011 U.S. Dist. LEXIS 122076 (E.D. Tenn. 2011) ...............................................13

*Casillas v. Westerfield,*
2020 U.S. Dist. LEXIS 5274 (D.N.M. Jan. 13, 2020)........................................5, 20

*City of Canton v. Harris,*
489 U.S. 378 (1989).........................................................................................11, 16

ii

91113457.2

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986) (per curiam) ........................................................................10

*City of Tahlequah v. Bond*,
    142 S. Ct. 9 (2021) ................................................................................................20

*Conner v. Travis Cty.*,
    209 F.3d 794 (5th Cir. 2000) ...............................................................................12

*Connick v. Thompson*,
    563 U.S. 51 (2011) .............................................................................................9, 11

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) ...........................................................................16

*Duffield v. Jackson*,
    545 F.3d 1234 (10th Cir. 2008) ...........................................................................16

*Reavis ex rel Est. of Coale v. Frost*,
    967 F.3d 978 (10th Cir. 2020) .............................................................................19

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ...............................................................................................7

*Gallagher v. Shelton*,
    587 F.3d 1063 (10th Cir. 2009) ...........................................................................16

*Gomes v. Wood*,
    451 F.3d 1122 (10th Cir. 2006) ......................................................................18, 19

*Green v. Branson*,
    108 F.3d 1296 (10th Cir. 1997) ...........................................................................17

*Hackford v. Babbitt*,
    14 F.3d 1457 (10th Cir. 1994) ...............................................................................6

*Hall v. Witteman*,
    584 F.3d 859 (10th Cir. 2009) ...............................................................................5

*Harlow v. Fitzgerald*,
    102 S. Ct. 2727 (1982) .........................................................................................18

*Holland v. Harrington*,
    268 F.3d 1179 (10th Cir. 2001) ...........................................................................19

*Hooper v. Pearson*,
    2010 U.S. Dist. LEXIS 75172 (D. Utah 2010) ....................................................10

iii

*Hunt v. Uphoff*,
　199 F.3d 1220 (10th Cir. 1999) .................................................................................7

*Jenkins v. Haaland*,
　2022 U.S. Dist. LEXIS 99861 (D. Utah Apr. 28, 2022) ............................................4

*Johnson v. Davis Cnty.*,
　2021 U.S. Dist. LEXIS 30419 (D. Utah Feb. 17, 2021) .........................................6, 7

*Koch v. Koch Indus.*,
　203 F.3d 1202 (10th Cir. 2000) ...............................................................................21

*Lewis v. Tripp*,
　604 F.3d 1221 (10th Cir. 2010) ...............................................................................18

*Malley v. Briggs*,
　475 U.S. 335 (1986)..................................................................................................18

*Mata v. Saiz*,
　427 F.3d 745 (10th Cir. 2005) ...................................................................................7

*Matthews v. Bergdorf*,
　889 F.3d 1136 (10th Cir. 2018) ...............................................................................20

*Mitchell v. Forsyth*,
　105 S. Ct. 2806 (1985)..............................................................................................18

*Mocek v. City of Albuquerque*,
　813 F.3d 912 (10th Cir. 2015) .................................................................................14

*Monell v. Dep't of Soc. Servs.*,
　436 U.S. 658 (1978)........................................................................................9, 11, 16

*Moss v. Kopp*,
　559 F.3d 1155 (10th Cir. 2009) ...............................................................................14

*Osterkamp v. Salt Lake Cty.*,
　2020 U.S. Dist. LEXIS 162449 (D. Utah Sep. 4, 2020) .........................................10

*Pahls v. Thomas*,
　718 F.3d 1210 (10th Cir. 2013) ...............................................................................18

*Pembaur v. City of Cincinnati*,
　475 U.S. 469 (1986)..................................................................................................11

*Perea v. Baca*,
　817 F.3d. 1198 (10th Cir. 2016) ...............................................................................19

iv

91113457.2

*Perry v. Durborow*,
  892 F.3d 1116 (10th Cir. 2018) ..................................................................................19, 20

*Pyle v. Woods*,
  874 F.3d 1257 (10th Cir. 2017) ..................................................................................14, 15

*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*,
  973 F.3d 1022 (10th Cir. 2020) .........................................................................................6

*Ramos v. Lamm*,
  639 F.2d 559 (10th Cir. 1980) ..........................................................................................7

*Robins v. Oklahoma*,
  19 F.3d 1249-50 (10th Cir. 2008) .....................................................................................5

*Ross v. Town of Austin*,
  343 F.3d 915 (7th Cir. 2003) ..........................................................................................12

*Sanders-Burns v. City of Plano*,
  594 F.3d 366 (5th Cir. 2010) ..........................................................................................12

*Saucier v. Katz*,
  533 U.S. 194 (2001)........................................................................................................20

*Schadel v. Gochis*,
  2020 U.S. Dist. LEXIS 140022 ........................................................................................4

*Schneider v. City of Grand Junction Police Dep't*,
  717 F.3d 760 (10th Cir. 2013) ..........................................................................................9

*Sealock v. Colorado*,
  218 F.3d 1205 (10th Cir. 2000) ........................................................................................7

*Stella v. Davis Cnty.*,
  2022 U.S. Dist. LEXIS 138051 (D. Utah Aug. 1, 2022) ..............................................21, 22

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ......................................................................................12

*Estate of Taylor v. Salt Lake City*,
  16 F.4th 744 (10th Cir. 2021) .....................................................................................18, 19

*Thaer Mahdi v. Salt Lake Police Dep't*,
  54 F.4th 1232 (10th Cir. 2022) .......................................................................................10

*United States v. Coffman*,
  638 F.2d 192 (10th Cir. 1980) ........................................................................................12

v

91113457.2

*Waller v. City & Cnty. of Denver*,
    *932* F.3d 1277 (10th Cir. 2019) ...............................................................................9

*Wilson v. Montano*,
    715 F.3d 847 (10th Cir. 2013) ...............................................................................19

*Zarnow v. City of Wichita Falls Tex.*,
    614 F.3d 161 (5th Cir. 2010) ..................................................................................12

**State Cases**

*Christensen v. Salt Lake Cnty.*,
    2022 UT App 51, 510 P.3d 299 (Utah Ct. App. 2022)...........................................22

*Spackman ex rel Spackman v. Bd. Of Educ.*,
    2000 UT 87, 16 P.3d 533 (Utah 2000)...................................................................21

**Constitutions**

Utah Constitution Article I, § 9....................................................................................2

**Statutes**

42 U.S.C. § 1983..............................................................2, 9, 11, 13, 14, 16, 17, 18

Utah Code Ann. § 53-6-103(3) ...................................................................................12

Utah Code Ann. § 53-6-202(4)(a)...............................................................................12

**Court Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................5

Fed. R. Civ. P. 12(b)(6)............................................................................................4, 12

**Other Authorities**

Plaintiff's Complaint...............................................................2, 3, 4, 8, 10, 14, 15, 17

vi

**RELIEF REQUESTED**

- Dismiss Plaintiff's first cause of action under 42 U.S.C. § 1983 for alleged failure to provide proper medical care against Provo employees.

- Dismiss Plaintiff's second cause of action under 42 U.S.C. § 1983 for alleged failure to supervise against Provo officers Whatcott and Grow.

- Dismiss Plaintiff's third cause of action under 42 U.S.C. § 1983 for alleged municipal liability against Provo.

- Dismiss plaintiff's fourth cause of action deprivation of rights under Article I, Section 9 of the Utah Constitution for alleged unnecessary rigor in confinement against Provo and its employees.

Plaintiff's factual allegations fail to show a plausible claim for relief against any City Defendant. Indeed, Plaintiff's factual allegations show no City Defendant was deliberately indifferent to any identifiable known need for medical care of the Plaintiff decedent. In addition to Plaintiff's failure to state a plausible claim generally, the individual Defendants are further entitled to dismissal based upon Plaintiff's failure to allege facts to disprove the presumption of the officers' qualified immunity.

The City moves for dismissal based on Plaintiff's failure to allege facts which show Plaintiff was denied any federally protected right and based on Plaintiff's failure to allege facts to show any City policy was the moving force that directly caused any alleged constitutional violation.

**RELEVANT FACTS**

Plaintiff alleges the following facts that demonstrate these Defendants' entitlement to dismissal:

1.    On September 28, 2020, at around 01:00 hrs., Provo City Police responded to Jason Todd Mace's residence for a domestic violence call for service.[1]

---

[1] Plaintiff's Complaint at ¶¶ 18, 20.

91113457.2

2.      On the morning of September 28, 2020, Officers Whatcott and Grow were supervising officers with the Provo City Police Department.[2]

3.      Gaylene Davis, Mace's mother, informed Provo Police officers her son had ingested pills prior to the officers' arrival.[3]

4.      Based on the officer's investigation, Provo City Police arrested Mace for domestic violence at approximately 01:10 hrs.[4]

5.      Officer Mahoney **took Mace directly from the scene of Mace's arrest to the Utah Valley Hospital for medical clearance** prior to being booked into the Utah County Jail.[5]

6.      Hospital staff treated Mace for injuries to his hand and foot.[6]

7.      Dr. Christensen at **Utah Valley Hospital medically cleared Mace** for transport and admission to the Utah County Jail.[7]

8.      The Utah County Sheriff's Office Utah County Jail Medical Clearance form filled out by Dr. Christensen specifically states, in response to the question "[i]s the patient exhibiting any signs of drug/alcohol impairment?" "No."[8]

9.      Mace was discharged from the hospital around 02:10 hrs. and transported by Officer Mahoney from the hospital directly to the Utah County Jail.[9]

10.     Mace vomited in the patrol car while being transported to Utah County Jail.[10]

---

[2] *Id.* at ¶ 19.
[3] *Id.* at ¶ 20.
[4] *Id.* at ¶ 21.
[5] *Id.* at ¶ 24.
[6] *Id.* at ¶ 25.
[7] *Id* at ¶ 32.
[8] *Id.* at ¶ 33.
[9] *Id.* at ¶ 35.
[10] *Id.* at ¶ 36.

91113457.2

11.    Officer Mahoney performed a portable breath test on Mace, which showed a blood alcohol content of .06 BAC.[11]

12.    Upon arrival at the jail, and while being assessed by jail medical personnel, Mace began to have seizures, in response to which **jail staff and Provo City officers immediately began to render medical aid** and call for advanced medical care.[12]

13.    EMS transported Mace back to Utah Valley Hospital for medical treatment.[13]

14.    The doctors at Utah Valley Hospital pronounced Mace deceased around 03:53 hrs.[14]

15.    Plaintiff does not allege any facts that Mace ever requested medical evaluation or medical care from any City Defendant.

16.    Plaintiff does not allege any facts which plausibly show any City Defendant could have perceived, let alone actually perceived, that Mace required care for a serious medical that Mace had not received or was not receiving.

**MEMORANDUM OF LAW**

**Fed. R. Civ. P. 12(b)(6) Standard of Review**

In reviewing a 12(b)(6) motion to dismiss, the court "accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor." *Jenkins v. Haaland*, 2022 U.S. Dist. LEXIS 99861, at *7-8 (D. Utah Apr. 28, 2022). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Schadel v. Gochis,* 2020 U.S. Dist. LEXIS 140022, at *6 (D. Utah August 5, 2020 (quoting *Bell*

---

[11] *Id.* at ¶ 37.
[12] *Id.* at ¶¶ 38, 39, & 40.
[13] *Id.* at ¶ 41.
[14] *Id.* at ¶ 42.

4

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Since the Supreme Court's clarification of the elements necessary to state a claim upon which relief may be granted in *Twombly* and *Iqbal,* a claim may survive a motion to dismiss for failure to state a claim only if a plaintiff pleads *facts* that show "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

> Determining whether a complaint states a plausible claim for relief will, [], be a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief."

*Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citation omitted).

A court does not accept legal conclusions as true. Rather, a complaint "must be supported by factual allegations" that make out a viable claim. *Ashcroft*, 556 U.S. at 679. Particularly important to the Court's consideration of Plaintiff's claims against the many City Defendants sued here is the axiom that "generalized statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, [do not] state any claim for relief." *Casillas v. Westerfield*, 2020 U.S. Dist. LEXIS 5274, at *6 (D.N.M. Jan. 13, 2020) (citing *Robins v. Oklahoma,* 19 F.3d 1249-50 (10th Cir. 2008)). Allegations must

5

"raise a right to relief above the speculative level." *Bick v. Utah State Univ.*, No., 2021 U.S. Dist. LEXIS 110003, at *3 (D. Utah June 10, 2021). The Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

**ARGUMENT AND AUTHORITIES**

**A.      Plaintiff's Own Allegations Show Mace Was Provided Medical Care**

The City Defendants never denied Mace medical care. When in custody, an individual is entitled to medical care for a serious medical need when the individual requests medical care. **Plaintiff's complaint fails to allege any facts that Mace ever requested medical care**. Alternatively, an individual in custody is entitled to medical care when a medical need becomes apparent to the extent the officers cannot disregard the need. Just as Plaintiff fails to allege Mace ever requested medical care, **Plaintiff's factual allegations fail to allege facts to show any City Defendant deliberately disregarded a perceived need for medical care**. To the very contrary, Plaintiff's own allegations admit that, twice when it appeared Mace might need medical care, Mace was provided medical care by trained medical professionals. Simply put, Plaintiff's own pleading allegations show Mace received – he was not denied - medical care.

To state a plausible claim for denial of medical care, a Plaintiff must show "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Johnson v. Davis Cnty.*, 2021 U.S. Dist. LEXIS 30419, at *13-14 (D. Utah Feb. 17, 2021). "Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment." *Id.* at *14.

The Court will "apply the two-part Eighth Amendment inquiry when a pretrial detainee alleges deliberate indifference to serious medical needs." *Quintana v. Santa Fe Cnty. Bd. of*

6

*Comm'rs*, 973 F.3d 1022, 1028 (10th Cir. 2020). The analysis of "deliberate indifference" involves "objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

The first portion of the inquiry is an objective component. "[a] party must make an objective showing that the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Johnson v. Davis Cty.*, 2021 U.S. Dist. LEXIS 30419, at *14 (D. Utah February 17, 2021). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The second portion of the analysis involves a subjective component. The subjective component of the inquiry is met if the official "knows of and disregards an excessive risk to inmate health or safety..." *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Assuming Plaintiff's factual allegations to be true for purpose of resolution of this motion, any causal connection between an apparent medical from the point of Mace's arrest through Mace's clearance at the hospital emergency room before being transported to the county jail after breaks any alleged chain of causation between anything prior to Mace's first visit to the hospital

7

and Mace's death. Put another way, Plaintiff admits Mace was provided medical evaluation and any care that medical professionals deemed necessary after Mace's arrest and until Mace was medically cleared by a physician as not being under the influence of alcohol or drugs and medically fit to be incarcerated in the county jail. Thus, the allegation Mace's mother notified Provo police officers that Mace had consumed pills is immaterial to Plaintiff's effort to state a claim because *Plaintiff admits* officers took Mace from the scene of Mace's arrest to Utah Valley Hospital where Dr. Christensen treated Mace and issued a medical clearance for admission to the jail, stating that Mace did not exhibit signs of drug of alcohol impairment.[15] Indeed, Plaintiff's claims of medical negligence by the hospital and medical staff, if true, only further undermine Plaintiff's effort to allege facts show the City Defendants could not have had reasonable belief – that is lacked deliberate indifference – that the City Defendants had not provided any necessary medical evaluation or treatment.

According to Plaintiff's own pleading, between being medically cleared by a physician at the hospital and when Mace began seizing after arriving at the jail sally port Mace only vomited. Plaintiff fails to identify any law, let alone clearly established law, that a simple event of vomiting, let alone one that occurred shortly after a professional medical evaluation and medical clearance, is sufficient to establish the objective element of need for medical care for a serious medical condition. Beyond this failure, Plaintiff wholly fails to even *attempt* to allege facts to show a subjective recognition by any officer – at this point Mace was in the company of only Officer Mahoney – of a need for medical care based on a single incident of vomiting.

As soon as the need for medical attention became apparent at the jail, jail medical staff immediately rendered aid to Mace while Provo officers called for EMS which promptly

---

[15] *Id.* at ¶ 33.

transported Mace to the hospital where Mace received advanced care until Mace was pronounced dead.

Rather than alleging facts sufficient to state a claim of an unconstitutional denial of medical care, **Plaintiff's own pleadings admit Mace received medical attention** whenever Mace *might* have needed it, on two separate occasions: Once directly after Mace's arrest and before the police officers brought Mace to the jail and a second time immediately after once he exhibited signs of a need for medical care. These pleading admissions are the antithesis of the requisite factual allegations necessary to state a claim under 42 U.S.C. § 1983 and fall well short of Plaintiff's burden to disprove the presumption of each officer's immunity from suit.

**B.     Plaintiff Fails to State a Plausible Claim Against the City**

**1.     The City Cannot Be Liable Unless an Officer Violated the Constitution**

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Accordingly, even if, *arguendo*, Plaintiff could state a claim against one or more of the individual City Defendants, Plaintiff's allegations still fail to show a plausible claim against the City. Plaintiff fails to present factual allegations showing the City, as opposed to, at most, an individual officer, deprived the Plaintiff of a protected federal right as required to state a claim against the City itself under *Monell*. *See also Waller v. City & Cnty. of Denver, 93*2 F.3d 1277, 1283 (10th Cir. 2019). "[U]nder § 1983, local governments are responsible only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (cleaned up).

91113457.2

Moreover, "a plaintiff cannot recover against a municipal corporation based on the actions of one of its officers when [no] officer inflicted [] constitutional harm." *Thaer Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232, 1240 (10th Cir. 2022) (citing, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). As Judge Benson, writing for this Court, has explained, "[i]t is well established that a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hooper v. Pearson*, 2010 U.S. Dist. LEXIS 75172, at *43 (D. Utah 2010) (quoting, *Heller, supra.*). Thus, in addition to alleging facts showing a constitutional violation by at least one individual City Defendant, to state a claim against the City, the Plaintiff must also allege *facts* which show: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury. *Osterkamp v. Salt Lake Cty.*, 2020 U.S. Dist. LEXIS 162449, at *8-9 (D. Utah Sep. 4, 2020).

     **i**     **Plaintiff Fails to Allege Facts Showing Any Unconstitutional City Policy**

In alleging a municipal policy or custom, the allegation "may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

> *Id* at * 9.

Plaintiff's complaint alleges only – and only conclusory - that the City failed to adequately train or supervise employees.[16] This bare conclusory allegation falls far below the pleading

---

[16] *Id.* at ¶¶ 84-97

91113457.2

standard necessary to state a claim by alleging *facts* to show the requisite deliberate indifference to a *known* need for training.

> [W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in de facto [prohibited] respondeat superior liability on municipalities...

*Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (cleaned up).

As the Supreme Court explained in *City of Canton v. Harris*, 489 U.S. 378 (1989), the seminal case addressing a § 1983 of failure to train or inadequate training, "there are **limited circumstances** in which an allegation of a failure to train can be the basis for liability under § 1983." *Id.* at 1204 (emphasis added). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts  to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* Moreover, as always required by *Monell,* "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986).

Pleading only conclusory, not factual, statements, and based solely on the single event of Mace's death, Plaintiff fails to allege such facts to reach the "stringent," *id.,* test of such deliberate indifference. Indeed, Plaintiff fails to allege any facts to even suggest that any failure to adequately train or supervise employees was undertaken with deliberate indifference to any injuries such an undefined policy might cause. Particularly considering Utah law, this bald claim is insufficient to state a claim of failure to train.

11

Utah Code Ann. § 53-6-103(3),[17] Peace Officer Standards and Training Division-Creation-Administration-Duties, provides that the State of Utah, and not any individual city "promote[s] and ensure[s] the safety and welfare of the citizens of this state in their respective communities and provide[s] for efficient and professional law enforcement by establishing minimum standards and training for peace officers and dispatchers throughout the state." Utah Code Ann. § 53-6-202(4)(a), Basic Training Course-Completion Required mandates that "[a]ll peace officer[s] shall satisfactorily complete the basic training course…as well as annual certified training of not less than 40 hours as the director, with the advice and consent of the council, directs."

Notably, Plaintiff does not allege any Provo officer failed to comply with Utah state minimum initial and recurrent training requirements. While the Tenth Circuit has apparently not directly addressed the effect of officer and municipal compliance with state-mandated minimum training several courts of appeal and district courts have held that compliance with such standards precludes a claim of municipal liability unless a plaintiff alleges and proves the state mandated curriculum is constitutionally inadequate.

"[W]hen officers have received training required by [state] law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010); *See also Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). "We consider compliance with state requirements as a factor counseling against a failure to train finding." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). *See e.g. Conner v. Travis Cty.*, 209 F.3d 794, 798 (5th Cir. 2000). The Seventh Circuit has come to same conclusion in *Ross v. Town of Austin*, 343 F.3d 915, 918 (7th Cir. 2003) (The fact that [] a police

---

[17] "[C]ourts are allowed to take judicial notice of statutes" *United States v. Coffman*, 638 F.2d 192, 194 (10th Cir. 1980), including when ruling on a motion under Rule 12(b)(6). *Tal v. Hogan*, 453 F.3d 1244, 1245 n.24 (10th Cir. 2006).

12

officer…completed training from the Indiana Law Enforcement Academy and had met all other statutorily mandated training standards, is further evidence that, as a matter of law, it was not the policy of [the city to] inadequately to train police officers."). Citing Sixth Circuit precedent, the district court in *Carpenter v. City of Bean Station*, 2011 U.S. Dist. LEXIS 122076, at *12 (E.D. Tenn. 2011), pointed out that "if the training was deficient, the creator of the training regimen is the POST Commission, not the city. In a real sense, the legal issue is whether reliance by a city on a state-mandated training and certification system for police officers constitutes a policy or custom that amounts to deliberate indifference. It cannot." As another district court explained, "A plaintiff cannot sustain a failure to train or inadequate training claim under § 1983 if the municipality complies with state-mandated training standards for its officers." Flores v. City of Palacios, 2005 U.S. Dist. LEXIS 27952, at *8 (S.D. Tex. Nov. 9, 2005).

Plaintiff's complaint is devoid of any allegation that Provo City Police officers are not certified by Utah Peace Officer Standards and Training ("POST") or that any of the officers fail to meet the minimum annual training requirements set forth by POST. Just as in *Bean,* in light of Utah law, coupled with Plaintiff's failure to allege facts showing the City failed to comply with state mandate minimum police training standards, Plaintiff fails to state a plausible claim of lack of training.

Plaintiff's allegations that "[p]olicy-making officials of Provo were deliberately indifferent to the need to properly train and supervise" fails to provide anything more than a conclusory allegation. Plaintiff never alleges that the officers did not meet the state minimum standards or that Provo City failed to maintain the annual training requirement set forth by POST. Plaintiff fails to plausibly state a claim that Provo City either inadequately trained or didn't train its officers and

13

that this was a deliberate decision on the part of policymakers and thus the municipal liability claims asserted in the complaint must fail.

### ii    Plaintiff also fails to allege facts to establish a direct causal link between the policy or custom and the constitutional injury.

Key to this claim of governmental liability is also the well-established rule that a "single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). To sustain the claim for municipal liability under § 1983, the claim must include allegations that the municipal policy or custom was the moving force behind the constitutional violation in order to survive a motion to dismiss. *See, e.g., Pyle v. Woods,* 874 F.3d 1257, 1266 (10th Cir. 2017) (affirming dismissal of municipal-liability claim because Plaintiff provided only a formulaic recitation of the elements of the claim, not sufficient factual allegations of a link between the injury and the municipal policy or custom); no particular facts in support of these threadbare recitals of the elements of a cause of action; *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (affirming dismissal of Complaint asserting that a municipal policy was the moving force behind the injury, but citing "no particular facts in support of these threadbare recitals of the elements of a cause of action"); *Moss, 559 F.3d at 1169* (affirming dismissal because plaintiffs failed to allege any conduct by the sheriff or county apart from their employees' actions); *Beedle v. Wilson*, 422 F.3d 1059, 1074 (10th Cir. 2005) (affirming dismissal where Plaintiff failed to identify a municipal policy or custom that caused the Plaintiff's injury).

While the complaint alleges, *without any factual support at all,* that "Provo [was] deliberately indifferent to the need to properly train and supervise employees"[18] and that "as a

---

[18] *Id.* at 85.

result of the conduct of Provo, Decedent did not receive treatment for his serious medical needs,"[19] " [these] allegation [are] the type of formulaic recitation of the elements of a cause of action that is insufficient to meet the *Twombly* pleading standard." *Pyle v. Woods,* 874 F.3d 1257, 1266 (10th Cir. 2017) (internal quotations omitted).

   iii  **Plaintiff also fails to allege facts to demonstrate the City established a policy with deliberate indifference to an almost inevitable constitutional injury.**

Not only do the Plaintiff's allegations fail to allege facts to show any unconstitutional city policy, Plaintiff also fails to allege facts to show the City's policymaker is in any way culpable for any deprivation of Mace's federal rights. Plaintiff's complaint again contains nothing more than an formulaic recitation of the *legal* elements of municipal liability, devoid of any factual allegations as required to state a plausible claim.

Even if, *arguendo,* Plaintiff had otherwise alleged *facts* suggesting *inadequacies* in the City's training of its officers, the failure to allege facts show deliberate indifference is equally fatal to this attempt to state a claim. A plaintiff must also show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* "[D]eliberate indifference is a stringent standard of fault, requiring proof that a [governmental policymaking] actor disregarded a known or obvious consequence of his action." *Id.* at 410.

---

[19] *Id.* at 93.

Cases "not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof." *Id.* at 406. Municipal liability is *only* appropriate for failure to train "where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion." *City of Canton v. Harris*, 489 U.S. 378, 397 (1989). Plaintiff also fails to allege any facts which show the culpability of a City policymaker for a violation of Plaintiff's rights.

**C.      Plaintiff Fails To State a Claim of Supervisory Liability**

Supervisors are not liable under § 1983 "unless there is an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, . . . exercise of control or direction, or . . . failure to supervise." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (internal quotations omitted). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Id.* Simply being a supervisor does not create liability asserted under § 1983. *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Plaintiff's allegations of failure to supervise are akin to a *Monell* analysis. "It was not enough in our Circuit for a plaintiff merely to show defendant was in charge of other state actors who actually committed the violation. Instead . . . the Plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). "[T]o impose § 1983 liability the plaintiff first had to establish the supervisor's subordinates violated the [C]onstitution." *Id.* (internal quotations omitted). "[T]he plaintiff must demonstrate an affirmative link between the supervisor and the violation...." Over time, this affirmative link requirement came to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id.*

91113457.2

Plaintiff does not allege facts to show that either Whatcott or Grow denied Mace any medical care. Even if Whatcott or Grow did not communicate information either had to a subordinate officer, no constitutional violation occurred because, *even without such alleged information,* **Plaintiff admits** Officer Mahoney took Mace directly from the scene of Mace's arrest to the hospital for medical care. Thus any causal connection between the Plaintiff's allegations that Whatcott and Grow "willfully withheld[]" information about the medication allegedly ingested by the Plaintiff[20] and the question of Mace receiving medical care is broken because Mace received in-hospital medical attention at Utah Valley Hospital, where, **as Plaintiff admits**, a doctor determined and reported that Mace was not under the influence of drugs.[21]

Fatal to the Plaintiff's claim of supervisor liability, Plaintiff only makes conclusory assertions regarding the requisite state of mind. Plaintiff alleges that Whatcott and Grow "exhibited deliberate indifference" by "willfully withholding" information about the pills Mace took.[22] Yet, Plaintiff fails to support these conclusory allegations with any facts supporting the state of mind requirement. "Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). The Court is not required to treat the conclusory allegations of the complaint as fact. Plaintiff fails to plead a plausible claim for supervisory liability against Whatcott and Grow and therefore the claim must be dismissed as a matter of law.

---

[20] *Id.* at ¶ 74.

[21] Plaintiff does not allege any personal participation on the part of the supervisory defendants in connection with any alleged need for medical care after Mace left the hospital.

[22] *Id.*

91113457.2

**D.    Qualified Immunity Bars Plaintiff's Claims Against All Individual Defendants**

Not only does Plaintiff's complaint fail to state a claim for a constitutional violation, even if, *arguendo,* it did, Plaintiff fails to allege facts and identify "clearly established" law to overcome the legal presumption that qualified immunity bars Plaintiff's claims against all of the individual officers.

"[T]he Supreme Court has recognized that public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). Qualified immunity shields government officials from civil damages when the "government officials performing discretionary functions...insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 102 S. Ct. 2727 (1982)).

When a government official asserts "qualified immunity from suit under 42 U.S.C. § 1983 [it] results in a presumption of immunity." *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021) (citation omitted). "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Mitchell v. Forsyth*, 105 S. Ct. 2806, 86 (1985)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity may be denied only if, on an objective basis, it is obvious no reasonably competent official would have concluded that the actions were constitutional. *Gomes, 451 F.3d at 1134.* However, "if officers of reasonable competence could disagree about the

18

91113457.2

lawfulness of the challenged conduct, then [qualified] immunity should be recognized." *Id.* at 1136. (internal quotations omitted).

A Plaintiff "can overcome this presumption only by show[ing] that (1) the officers alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021) *citing Reavis ex rel Est. of Coale v. Frost,* 967 F.3d 978, 984 (10th Cir. 2020) *quoting Perea v. Baca*, 817 F.3d. 1198, 1202 (10th Cir. 2016) (internal quotations omitted). If the Plaintiff fails to satisfy any part of the qualified immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

In cases where officers assert qualified immunity, "the plaintiff initially bears a heavy two-part burden. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue" *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). "For the law to be clearly established, [t]he contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Perry v. Durborow*, 892 F.3d 1116, 1122-23 (10th Cir. 2018) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)).

In determining the contours of the constitutional and how those contours must be sufficiently clear to a reasonable official, a Plaintiff must "(1) identify an on-point Supreme Court or published Tenth Circuit Decision or (2) show the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Id.* at 1123 (citations and internal

19

quotations omitted.) The Supreme Court recently overturned the 10th Circuit Court of Appeals on the issue of clearly established explaining that the Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021). Accordingly, appropriate analysis of qualified immunity entails a determination of whether a protected right allegedly violated, **considering the specific factual circumstances of the case**, was so clearly established in a particularized sense at the time an officer acted, that no objective officer could have reasonably believed the challenged action was lawful. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Accord, *Aldaba v. Pickens*, 844 F.3d 870, 872 (10th Cir. 2016).

Plaintiff fails to identify clearly established law that would have informed any of the individual Defendants that what Plaintiff *alleges* any officer did would have violated the Constitution. Accordingly, Plaintiff also fails to state a claim against any individual City employee because Plaintiff fails to disprove the presumption all are immune from suit. *Compare,* Perry *v. Durborow,* 892 F.3d 1116, 1122-23 (10th Cir. 2018)

Moreover, Plaintiff must do more than show...that defendants, as a collective and undifferentiated whole, were responsible for [alleged] violations." *Matthews v. Bergdorf,* 889 F.3d 1136, 1145 (10th Cir. 2018). Rather, to overcome the presumption that each individual is entitled to dismissal based on their own immunity, Plaintiff must allege facts sufficient to overcome the presumption of immunity as to each individual officer's *own conduct.* "Plaintiff [] must set out exactly what each defendant did, when they did it, and how that individual's actions violated Plaintiff's constitutional rights." *Casillas v. Westerfield*, 2020 U.S. Dist. LEXIS 5274, at *11 (D.N.M. 2020) (citing *Ashcroft*, 556 U.S. at 677-80, 129 S. Ct. 1937). "

20

Plaintiff fails to establish that any City Defendant's actions violated a constitutional or statutory right. Plaintiff further fails to allege *facts to* show an conduct by any City Defendant violated clearly established at law the time of conduct as issue. Taking the individual officers' actions in context, Plaintiff cannot demonstrate that each defendant's actions were sufficiently clear that a reasonable officer would understand what any officer was doing was wrong. The individual officers are immune from suit, even if, *arguendo,* Plaintiff could otherwise state a claim.

**E.      Plaintiff Lacks Standing to Sue for Unnecessary Rigor In Confinement**

"The Utah Supreme Court has not directly addressed whether a family member can bring a claim under the unnecessary rigor clause of the Utah Constitution that is derivative of a constitutional violation against a deceased family member." *Stella v. Davis Cnty.*, 2022 U.S. Dist. LEXIS 138051, at *5 (D. Utah Aug. 1, 2022). "If, however, the state's highest court has not decided the issue presented, [a federal court] may either certify the question to that court or predict how it would rule." *Koch v. Koch Indus.*, 203 F.3d 1202, 1230 (10th Cir. 2000).

In August of 2022, this Court chose the latter, citing the Utah Supreme Court's holding that "[t]o ensure that damages actions are permitted only under appropriate circumstances in a lawsuit brought under the Utah Constitution, a plaintiff must establish...three elements before he or she may proceed with a private suit for damages." *Stella v. Davis Cty. ,* 2022 U.S. Dist. LEXIS 138051, at *5-6 (D. Utah August 1, 2022) *citing Spackman ex rel Spackman v. Bd. Of Educ.,* 2000 UT 87, 16 P.3d 533, 538 (Utah 2000).

The first element is that "a plaintiff must establish that he or she suffered a flagrant violation of his or her constitutional rights." *Id.* (citing *Spackman, 2000 UT 87*). "The plain language of this condition requires that the Plaintiff herself directly suffer the constitutional violation. Moreover, the purpose behind the unnecessary rigor clause supports the position that the

21

prisoner herself must bring a claim." *Id.*

"The Utah Supreme Court has explained that the unnecessary rigor clause protects *prisoners and arrestees* against unnecessary abuse." *Id.* at *6 *citing Christensen v. Salt Lake Cnty.*, 2022 UT App 51, 510 P.3d 299, 307 (Utah Ct. App. 2022). "Spackman suggests that Decedent must establish that []he—not [Gaylene Davis]—suffered a flagrant violation of [his] constitutional rights. And Plaintiffs have simply not identified or offered evidence that Defendants violated any of [Davis'] Utah state constitutional rights." *Stella*, 2022 U.S. Dist. LEXIS 138051, at *6. Plaintiff's claim for Unnecessary Rigor in Confinement fails because neither Mace's estate or his surviving heirs have standing to pursue that claim.

## CONCLUSION

For these reasons, the Court should grant the City Defendants' motion and dismiss Plaintiff's claims against all City Defendants.

DATED: March 6, 2023                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By:   */s/ William S. Helfand*
      William S. Helfand
      Attorneys for Provo City, Medina Dore, Jason Mahoney, Zachary Miguel, Carter Grow, and Chet Whatcott

22

91113457.2

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2023, I caused a true and correct copy of the foregoing **DEFENDANTS PROVO CITY; MEDINA DORE; JASON MAHONEY; ZACHARY MIGUEL; CARTER GROW; AND CHET WHATCOTT'S MOTION TO DISMISS** to be electronically filed through the Court's CM/ECF system, which will send notification of such filing to the following:

Jonathan D. Hart
**HART & HART**
*Attorney for Plaintiffs*

Gary DeMott Millward
**PROVO CITY ATTORNEYS OFFICE**
*Co-Counsel for Defendants*
*Provo City, Medina Dore, Jason Mahoney,*
*Zachary Miguel, Carter Grow,*
*and Chet Whatcott*

Christian W. Nelson
Brandon B. Hobbs
**NELSON NAEGLE**
*Attorney for Defendant*
*R. Dale Christensen, M.D.*

James T. Burton
Hilary R. Adkins
**KIRTON MCCONKIE**
*Attorneys for Defendant*
*Intermountain Health Care*
*dba Utah Valley Hospital*

/s/ Cynthia Worne

23

91113457.2